Denio, Ch. J., (dissenting.)
We have already decided that a railroad corporation may lawfully agree with a passenger who is carried gratuitously in its cars, that it will not be responsible for injuries resulting from the negligence of its servants. (Perkins v. The N. Y. Central R. R. Co., 24 N. Y., 196.) If the plaintiff’s intestate, in the present case, was by agreement to be carried, and was in fact carried, by the defendants, wholly without compensation, the judgment referred to is a precedent for the decision of the appeal now under consideration, and the judgment appealed from ought to be reversed. But I do not consider the deceased, in this case, to have been a free p'assenger, in any proper sense. The firm of which he was a member contracted with the company for his passage by the written agreement which was given in evidence. That agreement contained mutual stipulations by each of the contracting parties. On the part of the company, the contract was to transport certain live stock belonging to the deceased and his partner, and also to carry the members of the firm or such other persons as the firm should employ to take charge of the stock during the transit, for a specified compensation, namely, seventy dollars for each car load of the cattle, which sum the contract obliged the firm to pay; and the contract to pay that compensation was the equivalent for the whole service which the Company had undertaken on its part to perform. If there had been no other stipulation in the written agreement, no one could doubt that the price of the passage of the person riding to take charge of the stock was embraced in the amount to be paid by the firm. It could not be determined what portion of the seventy dollars per car load of cattle was the equivalent for the transportation of the property, nor what part of it went to pay for carriage of the person in charge; but it would be entirely clear that the whole of the money paid by the firm was the compensation for all the services which the railroad company were to perform. But the contract also contained stipulations that the owners of the cattle *456 were to take certain risks respecting them upon themselves, some of which risks would probably have otherwise devolved upon the Company; but with these we have no present concern. There was, however, a stipulation in these terms, that “the persons riding free to take charge of the stock do so at their own risk of personal injury, from whatever cause; ” and it is stated in the instrument, in effect, that a smaller compensation was received by the Company, on account of the assumption of the risks mentioned, than that which would have been required, if they had not assumed these risks. I do not perceive that the portions of the contract which relate to the risks affect its construction upon the point under immediate consideration ; namely, in determining what stipulations on the part of one of the parties are the consideration of the undertakings of the other party. It remains evident that, in consideration of the money which the owners of the stock were to pay, the cattle were to be transported to their destination, and the persons riding on the train to take care of them were also to have their passage without any additional payment. The contract calls this “riding free,” and it is so in a certain sense; that is, they get their passage in consideration of the other provisions of the contract, and free from the payment of the fare which is exacted of other passengers. The persons who were to travel in consideration of the contract respecting the cattle, were not obliged to go in the cars attached to the cattle train, but were presented with passage tickets, admitting them to seats in the ordinary passenger cars, without further payment; but these tickets contain, on one side, a very distinct statement that the Company is not to be liable for injuries to the person arising out of t'he negligence of the company’s agents. If such a stipulation is legal, the passenger receiving the ticket must be deemed to have assented to it, as one of the terms of his contract with the Company.
. These considerations lead me to the conclusion that the deceased, when he received the fatal injury, was not traveling as a free passenger on the defendant’s road so as to bring the case within the reason of the case of Perldns against these defendants. *457 The price of his passage was paid for by the other stipulations of the agreement. In The Philadelphia, &c., Railroad Company v. Derby (14 How. U. S., 468), and again in The Steamboat New World v. King (16 id., 469), passengers in the defendants’ vehicles who did not pay anything, but the conveyance of whom was considered incidentally advantageous to the proprietors of the line, were held not to be gratuitous passengers. It seems to me, therefore, that the condition of the deceased, and the right of his representatives to recover damages on account of his death, are precisely the same as though he had paid his fare in money; and that the defendants are liable in this action, unless the agreement contained in the contract, and repeated on the passenger ticket, to assume the risk of injuries caused by the negligence of the Company’s servants, is a lawful and valid stipulation. It must be admitted that the owners of the cattle were enabled to contract for the services which the Company agreed to render, at a less price than they would have been obliged to pay if they had not assumed the risks mentioned ; for it is so expressly stated in the agreement.
" But I am of opinion that the defendants had no right, even by contract, to exonerate themselves from the consequences of the negligence of their own servants, and to cast these burdens upon passengers who paid a compensation for their passage. The maxim, modus et conventio vincunt legem, is not of universal application, but is subject to certain limitations in cases where the interests of the public, or of morality, are affected by a contract. The general railroad act, the provisions of which are binding upon the defendants’ corporation, after enacting that every railroad corporation shall start and run their cars for the transportation of persons-and property at regular times and shall furnish sufficient accommodation for the transportation of all such passengers and property, and shall transport and discharge such passengers and property “ on the due payment of the freight or fare legally authorized therefor,” declares in terms that the corporation “ shall be liable to the party aggrieved, in an action for damages, for any neglect or refusal in the premises.” (Laws of 1850, p. 231, § 36.) The plaintiffs’ intestate entitled him *458 self to the benefit of this provision by the payment of such fare as was required of him by the defendants. ' But he waived, if it was competent for' him to do so, the- liability of the defendants to respond to him in an action for damages imposed by this provision and by the general rules of law; and the general rule certainly is that one may, at his pleasure, renounce the benefit of a provision introduced into a contract or a law entirely in his own favor. But to this rule there is also a limitation of the same general nature as that to which I have just referred. The law will not allow parties by their contracts to subvert its own policy. If the public has an interest thát railroad corporations should in all cases be and continue liable for injuries to passengers paying fare, occasioned by the negligence of their servants, and if the provision cited from the general railroad act was enacted in furtherance of that policy, it is not in the power of parties to change the rule in individual cases. The defendants claim a right to exempt themselves from the liability imposed by law, by special contracts with passengers. As to one class of passengers, that to which the deceased in this case belonged, they have a standing- form of a contract by which the responsibility for the negligence of .their servants is shifted from their own shoulders to those of the passengers. If this arrangement shall be sustained, I do not see why it might not be applied to all cases. Suppose they should prepare a set of passenger tickets for which only one-half or three-fourths or any other proportion of the usual price should be asked, and which should contain a stipulation similar to the one printed upon the back of the passenger ticket furnished to the deceased in the present case. No passenger expects, in his individual case, to be injured or destroyed in the course of his journey, but the pecuniary advantage held out to him by such a ticket as I have supposed is direct and immediate. I have no doubt but that a large proportion of the persons traveling by railroad would purchase the cheaper tickets and agree to become their own insurers. To the precise-extent to ( which this arrangement should prevail, the pecuniary inducements of the corporation to the exercise of the high degree of *459 care and vigilance which the peculiar nature of this mode of transit requires, might be expected to be relaxed. If we assume, as I think we reasonably may, that the provision of the statute declaring the liability of the corporation for the neglect of their servants was introduced for reasons of public policy and in order to secure the greatest degree of caution on the part of the managers of the railroads, such a practice as I have supposed would frustrate the intentions of the legislature.
I concede that there is no direct authority for the conclusion to which I have arrived. But the subject itself is of recent origin, bio arrangement in the whole range of modern civilization can compare with that by which many hundreds of people are carried at the same time, at an unprecedented rate of speed, by the power of steam, from one part of the country to another, by various and complicated contrivances, where a very slight neglect would be likely to prove extensively fatal to life or limb. The circumstances were well calculated to call for the most careful provisions on the part of the legislature in order to secure the utmost degree of care and circumspection. Railways are constructed and operated for purposes of pecuniary gain. The damages or compensation paid to parties injured, and to the representatives of such as are killed, constitute, unfortunately, a considerable deduction from the profits of such enterprises. The liability of the corporation to make such compensation is established by a public law. One object of the enactment was, no doubt, to enforce the rendering of justice to such persons as might suffer from the neglect of the corporations or their agents. If this were all, persons engaging passage on a railroad might waive their rights by a prospective arrangement; but if it be true, as I believe it to be, that there was a further motive such as I have suggested, namely, to secure the greatest degree of perfection in the mechanical arrangements, and of skill and caution on the part of the operators'concerned in the management, then the provision was made in aid of a public policy in which every citizen of the State is interested, and which no one, nor *460 any number of persons, by a private bargain with a railro.ad corporation, can weaken or subvert.
It is laid down in all systematic treatises on contracts, that stipulations in violation of public policy are void, and the rule is exemplified by numerous adjudications. The familiar instances in which agreements in restraint of trade have been declared illegal, fairly exemplify the principle. The party thus binding himself' does not thereby undertake to do anything wrong in itself; and it is not on his account that the contract is considered invalid. But the public at large have an interest in encouraging industry and enterprise, and in preventing monopolies. Although the principle referred to is a general one, it is not often that a court can be properly called upon to apply it to a new case. Men’s minds may well differ as to what may or may not accord with public policy in a given case; and whether the performance of a particular undertaking would be hostile in an appreciable degree to a principle of public law, may present a question of difficulty. The laws enacted to enforce care and attention in the management of railways and the engines and carriages by which such immense numbers of people are conveyed, are intended to sub-serve a policy which looks to the security of the community; and I think we cannot err in holding that any contract, the tendency of which is to impair the efficiency of such laws, is illegal within the principle which has been mentioned.
. I have looked carefully at the cases respecting the ability of common carriers to limit their responsibility by special contract, or by general notice brought home to the owner of the goods.' It was once supposed to be settled in this State that an agreement that the carrier should not be responsible, according to the common law, would be void, as being against public policy (Gould v. Hill, 2 Hill, 623); but the point was reconsidered and the question settled the other way. (Dorr v. The New Jersey Steam Nav. Co., 1 Kern., 485.) We adhere, however, to the rule that the carrier cannot avoid liability by giving notice to that effect, even though it be brought home to the party sending forward the goods. (Hollister v. Nowlen, *461 19 Wend., 234; Cole v. Goodwin, id., 251.) In thus holding, we assume that such contracts are, to a certain extent, hostile to sound public policy; for we reject evidence which would be competent to prove an agreement in any other case. But these decisions do not relate to carriage on railroads, nor do they concern the transportation of passengers. As to the carriage of property, the English courts, it must be conceded, do hold that railroad companies may, by special contract, avoid responsibility for negligence of their own servants, though of the degree called gross negligence. (Carr v. The Lancashire, &c., Railway Co., 14 Eng. Law.and Eq., 340; Austin v. The Manchester, &c., Railway Co., 70 id., 434.) It is not necessary to determine whether we should decide in accordance with that doctrine; for there is a manifest distinction between the case of property and that of persons. As to the former the carrier is an insurer against all accidents, except in two well known cases, and may often be held liable without any actual fault on his part or on that of his servants; while a carrier of passengers can only be made responsible for actual negligence of himself or of those for whose acts and omissions he is responsible. It is quite consistent to allow one who, in the absence of a contract, is a general and almost a universal insurer, to qualify his liability by an agreement with the other party, and still to hold that, where the law for the better protection of life and member has attached a certain consequence to actual negligence, that the parties cannot, by convention, dispense with so salutary a rule.
These considerations have led me to the conclusion that the judgment appealed from ought to be affirmed.
Wright and Sutherland, Js., also dissented.
Judgment reversed, and new trial ordered.